UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LYNETTE DIEDRICH,

        Plaintiff,

v.                                          Case No. 14-CV-974

CAROLYN COLVIN,

        Defendant.

## DECISION AND ORDER

On June 10, 2010, Plaintiff Lynette Diedrich filed an application for disability and disability insurance benefits alleging disability beginning February 1, 2009. Her last date insured is December 31, 2012. Plaintiff's application was denied initially and on reconsideration. Plaintiff appeared before an administrative law judge (ALJ) on November 27, 2012 without representation. Based on the testimony of Plaintiff and the medical record presented, the ALJ found that Plaintiff's chronic skin problems, foot and shoulder arthritis, and affective disorder were all severe impairments. Notwithstanding these impairments, however, the ALJ found that Plaintiff retained the following residual functional capacity (RFC):

> to perform light work as defined in 20 C.F.R. §404.1567(b) except no climbing of ladders, ropes or scaffolds and no more than occasional exposure to extreme cold. She is additional limited to two or three-step job tasks that allow for being off task up to 10% of the workday in addition to regularly scheduled breaks. She is also restricted from fast-paced production and from more than occasional interaction with supervisors. She is further limited to jobs involving few, if any, workplace changes and those that would allow for one unscheduled absence or one tardy arrival per month.

(R. 22.)[1] Assuming a person of Plaintiff's age, education and work experience, with the foregoing RFC, a vocational expert (VE) testified that such person would be unable to perform Plaintiff's past relevant work as a customer service representative, farm worker, machine feeder, receptionist, and telephone solicitor. The VE further testified, however, that there were a number of jobs in the State of Wisconsin that such a person could perform, including cleaner/housekeeper (6,000 light jobs), office machine tender (1,000 – 2,000 light jobs), weigher/measurer (500 – 1,000 light jobs), packager (2,000 – 3,000 light jobs), assembler (1,000 – 1,500 light jobs), surveillance system monitor (500 – 1,000 sedentary jobs), inspector/sorter (500 – 1,000 sedentary jobs), and assembler (500 – 1,000 sedentary jobs). Based upon this testimony, the ALJ found that Plaintiff was not disabled and denied her application for benefits.

Plaintiff retained counsel who presented new evidence before the Appeals Council (AC). The AC denied further review, making the ALJ's decision the final decision of the Commissioner. Plaintiff then filed this action for judicial review in which she argues that the ALJ failed to fully disclose the information needed to insure a knowing and voluntary waiver of her right to counsel, that the ALJ failed to scrupulously develop the record, that the ALJ failed at step two to analyze all severe impairments, that the ALJ made an improper credibility determination, and that the ALJ made a faulty step five analysis. For the reasons given below, the decision of the Commissioner will be reversed and remanded for further proceedings.

---

[1] "Light work," as defined in the cited regulation, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing or when it involves sitting most of the time with some pushing and pulling arm or leg controls."

2

**A. Standard of Review**

On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind could accept as adequate to support a conclusion.'" *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the Agency's own rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). If the ALJ commits an error of law, "reversal is required without regard to the volume of evidence in support of the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997); *accord Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003), *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**B. Waiver of Counsel and Development of the Record**

A claimant has a statutory right to counsel at disability hearings. 42 U.S.C. § 606; 20 C.F.R. § 404.1700. "The claimant must be properly informed of this right, but may waive it 'if given sufficient information to enable him to intelligently decide whether to retain counsel or proceed *pro se*.'" *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991) (*quoting Hawwat v. Heckler*, 608 F.Supp. 106, 108 (N.D.Ill.1984)). The information that must be given to claimants is well established by circuit precedent: "To ensure a valid waiver of counsel, we require the ALJ to explain to the *pro se* claimant (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and *required court approval of the fees*." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (emphasis added) (citing *Thompson*, 933 F.2d at 584). Where the ALJ fails to obtain proper waiver, "the matter must be remanded for a new hearing unless the Commissioner can establish that the ALJ fully and fairly developed the record." *Davis ex rel. J.E.C. v. Colvin*, 2014 WL 4954470, at *5 (E.D. Wis. Oct. 2, 2014). The ALJ meets his duty where he makes a searching inquiry into possible disabilities and uncovers all relevant evidence. *Id.* If the commissioner can show the record was developed fully and fairly, "the plaintiff has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap. Prejudice may be demonstrated by showing that the ALJ failed to elicit all of the relevant information from the claimant." *Binion v. Shalala*, 13 F.3d at 245.

As noted above, Plaintiff went unrepresented before the ALJ. Additionally, due to a problem with a change of address and plaintiff losing her house, plaintiff did not receive notice before the hearing of her right to representation. (R. 40.) Discovering this, the ALJ informed Plaintiff of: (1)

4

the manner in which an attorney can aid in the proceedings ("[A] representative can help you develop the record, can set forth arguments for you, can make sure the records are complete, can explain medical terms and . . . the process that we have for establishing disability."); (2) the possibility of free counsel or a contingency arraignment ("[T]hey're only entitled to that if it's a favorable decision up to $6,000, not $6,000. It's 25 percent of any retroactive benefits up to $6,000. There are also organizations that do provide representation free of charge depending on your financial situation."); (3) the limitation on attorney fees to 25 percent of past due benefits ("It's 25 percent of any retroactive benefits."). (R. 40-41.) The ALJ explained the first two requirements but only explained half of the third requirement. He did not explain that the fee based on a percentage of past due benefits required court approval.

Defendant contends that the "up to" language satisfies the *Binion* requirement that ALJ inform claimants that the court must approve attorney's fees, but this is incorrect. "Up to" could signify many other things, including that a claim for less than $24,000 would result in fees less than $6,000, and certainly does not explain that fees must be approved by the court. Therefore, the ALJ did not obtain a proper waiver of counsel.

Because the ALJ did not get a proper waiver of counsel, this court must determine whether the Commissioner has established that the ALJ fully and fairly developed the record. The Commissioner need not prove that the ALJ followed every line of thought that an attorney for the Plaintiff would have. The ALJ also does not need to anticipate every avenue an attorney for a claimant could possibly imagine or bring to light every possible iota of evidence. The standard is that an ALJ has done his job when he "probes the claimant for possible disabilities and uncovers all of the relevant evidence." *Binion v. Shalala*, 13 F.3d at 245 (7th Cir. 1994). This does not mean that

5

the ALJ must ask the claimant about every medical issue raised in the record. Indeed, where the record is clearly lacking on a particular issue or limitation, the ALJ does not have to inquire about those issues during a hearing. The ALJ remains free to rely on the record as a whole and should primarily do a searching inquiry where the record is unclear and more information during a hearing would help the ALJ to make a fully informed decision.

Nevertheless, the Commissioner has not met her burden in this case to show that the ALJ "fully and fairly developed the record." In her brief, Plaintiff alleges multiple areas where the ALJ failed to develop the record. Plaintiff states that the ALJ should have allowed for the Plaintiff to see the exhibits in her case. Plaintiff also points out that the ALJ did not develop testimony about her physical limitations, determine how extensive Plaintiff's daily activities were and how long they took, and look into the financial barriers to treatment, fear of treatment, medication side effects, or Plaintiff's spinal issues. Additionally, Plaintiff argues that the ALJ failed to inquire into all of the relevant facts with regard to the VE testimony and potential lines of inquiry into the VE's qualifications, source materials, and methodologies. These are potentially material points of fact that the ALJ should have inquired into in order to develop a full and fair record. The Commissioner did not attempt in her brief to argue that each of these areas were fully developed. Instead, the Commissioner mainly challenges Plaintiff's contention that evidence brought before the Appeals Council is relevant, leaving other issues undiscussed.

Specifically, the Commissioner fails to set forth an argument that the ALJ fairly and fully developed Plaintiff's barriers to treatment, mental impairments, physical limitations and extent of Plaintiff's daily activities. This circuit has recently emphasized the importance of the record being fully developed with regards to mental impairments relating to concentration, persistence, or pace.

6

*Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015). Similarly, this circuit has been especially critical of ALJs' use of testimony relating to daily activities absent well developed facts on that issue. *Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012). The law also requires certain inquiries into barriers for non-treatment which were not discussed in detail by the ALJ here. SSR 96-7p.

At the same time, it is clear that the ALJ made some effort to gather information on many of these topics but was diverted by Plaintiff's non-responsive answers. For example, in response to the ALJ's question, "What are the medical problems that make you unable to work?", Plaintiff's two word answer was "the frustration." (R. 66.) When asked to elaborate, Plaintiff explains that her doctors keep leaving the clinic, they want her to take different medications, and they can't tell her what is wrong with her. (Id.) She then goes off on tangential issues like how she weaned herself off of Lamictal. (R.67.) When asked if she had any physical limitations, physical impairments, Plaintiff says there is a weight restriction on both her wrists that dates back to her job at Bemis, but fails to say what that restriction is and whether it is still in effect. (R. 69.) Though Plaintiff claimed that her various illnesses, injuries and conditions affected her ability to lift, stand, walk and sit (R. 210), and the medical record reflects treatment for conditions that could account for difficulties in such areas, she was not asked and did not offer any information about them.

Plaintiff's failure to fully and directly respond to the ALJ's general questions may be symptomatic of the affective disorder that has been diagnosed, but regardless of whether that is the reason or not, the record was not fully developed by the ALJ. She is morbidly obese and has sought treatment for difficulties with her feet. Likewise with respect to sitting. Plaintiff has a history of chronic cysts that have become infected precluding her from sitting for long periods of time. Having failed to obtain a proper waiver of counsel, the ALJ was required to fully develop the record as to

7

the various impairments disclosed in the medical file. He failed to do so here, and the case must therefore be remanded for a new hearing. Although Plaintiff alleges the ALJ committed other errors as well, there is no need to address them since a new hearing is required.

## CONCLUSION

For the reasons given above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** for further consideration pursuant to 42 U.S.C. § 405(g)(sentence four).

**SO ORDERED** this 25th day of September, 2015.

    s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court